IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ADMIRAL INSURANCE COMPANY                                         PLAINTIFF

V.                                      4:14CV00296 JM

DEONTE BRADLEY, et al.,                                           DEFENDANTS

ORDER

Plaintiff Admiral Insurance Company ("Admiral") seeks a declaration that it is not liable to indemnify and defend a lawsuit filed by Nominal Defendant DeShawn Scoggins against Admiral's insured, Kappa Alpha Psi Fraternity Inc.[1] in state court (the "Underlying Case"). DeShawn Scoggins has filed a Counterclaim seeking a declaration by the Court that there is coverage by Admiral. Admiral has filed a Motion for Summary Judgment. The only Defendant who has responded to the Motion is DeShawn Scoggins.

Mr. Scoggins is a former student at Arkansas Tech University where he pledged to Kappa Alpha Psi Fraternity Inc. ("Kappa Alpha"). On April 17, 2012, Mr. Scoggins attended an initiation at a house in Russellville, Arkansas with members of Kappa Alpha Deonte Bradley, Calvin Williams, Stephen Bender, Klyantel Summons, Prince Cross, Monterrio Elston, Oliver Michael Fitzpatrick, Richard Harper, II, Ryan Jones, Cameron Larkin, Jahmada Martin, Nicholas Sanders, Kitrell L. Wynee, Lemontrell Dejuan Blocker, David L. Green, Calvin L. Hemphill, Sam C. Louis, Kennan J. Madden and Timothy D. Thomas (the "Individual Defendants"). Mr. Scoggins claims that he was caned, paddled, and hit for several dozen minutes by the Individual Defendants. As a result, Mr. Scoggins was hospitalized with fluid in his lungs and severe kidney

---

[1] Deonte Bradley, Calvin Williams, Stephen Bender, Klyantel Summons, and Arkansas Tech University are also named defendants in the underlying case.

damage. He was placed in a medically induced coma for four days and remained hospitalized for three weeks. Mr. Scoggins filed the Underlying Action in the Circuit Court of Pope County, Arkansas against Kappa Alpha and all of the Defendants named in the instant.

Kappa Alpha maintained a Commercial Lines insurance policy (the "Policy") with Admiral at the time of the incident. The Policy states:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

b. This insurance applies to 'bodily injury' and 'property damage' only if:

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that take place in the 'coverage territory';

In the Policy, "'Bodily Injury' means bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time. . . . 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The Policy excludes coverage for expected or intended injury, assault and/or battery, hazing, sexual or physical abuse, or molestation. Expected or intended injury is described as "'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." The terms assault and/or battery, hazing, sexual or physical abuse, and molestation are not defined in the Policy.

Admiral argues that the Defendants in this case are not insureds under the Policy, that the events that are the focus of the Underlying Case do not constitute an "occurrence," and the

exclusions for hazing and assault and battery apply to these facts.  Mr. Scoggins argues that the Kappa Alpha members were insureds under the Policy as admitted by Admiral's representative.  Mr. Scoggins argues that the term "accident" used in the definition of an "occurrence" is ambiguous.  Further, even if accident is not ambiguous, there is evidence that the severity of Mr. Scoggins's injuries were unexpected and unintentional.  Finally, Mr. Scoggins contends that the terms hazing and assault and battery are ambiguous and there is a question of fact as to whether the exclusions would apply to all of the Defendants.

Analysis

The law regarding construction of an insurance contract is well settled in Arkansas. If the language of the policy is unambiguous, the court will give effect to the plain language of the policy without resorting to the rules of construction. *Norris v. State Farm Fire & Cas. Co.*, 16 S.W.3d 242 (Ark. 2000); *Western World Ins. Co. v. Branch*, 965 S.W.2d 760 (Ark. 1998). On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Norris*,  16 S.W.3d 242; *Smith v. Prudential Prop. & Cas. Ins. Co.*, 10 S.W.3d 846 (Ark. 2000). Ordinarily, the question of whether the language of an insurance policy is ambiguous is one of law to be resolved by the court. *Norris*, 16 S.W.3d 242; *Western World*, 965 S.W.2d 760.  The court, and not the jury, determines the construction and legal effect of the policy, except when the meaning of the language depends upon disputed extrinsic evidence. *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC*, 411 S.W.3d 184, 190 (Ark. 2012).

First, the Court must determine if the Defendants are "insureds" under the Policy.  The

Policy states that "fraternity members" are insureds "but only while acting within the scope of their duties on behalf of the Named Insured." Admiral argues that the Underlying Complaint does not allege that the Defendants were acting within the scope of their duties.

The deposition of Defendant Stephen Bender explains that the Incident was the fraternity's Chapter Night. It is a part of the initiation process for Kappa Alpha fraternity members in his chapter and other chapters. (ECF No. 72-2). The Pledge Trainer, Defendant Deonte Bradley, scheduled the meeting and informed the Kappa Alpha members that it was Chapter Night. *Id.* It was common knowledge that Chapter Night included paddling, caning, and hitting a pledge. (ECF No. 72-2, 72-3). The Defendants were acting within the scope of their duties as Kappa Alpha members on April 17, 2002, while participating in Mr. Scoggins' Chapter Night. They are insureds under the Policy.

The parties have argued that the Policy's definition of "occurrence" is an issue. It is unnecessary, however, for the Court to determine whether the April 17, 2002 Chapter Night was an "occurrence" because the Policy's exclusions clearly preclude coverage in this case.

The Policy specifically excludes coverage for assault, battery, hazing, or physical abuse The Court finds as a matter of law that these terms are not ambiguous and will give effect to the plain language of the policy. It is undisputed that Mr. Scoggins was hit with a paddle or cane by Kappa Alpha fraternity members on April 17, 2002 as a part of his initiation into the fraternity and he suffered physical harm as a result. These actions fit within any of these four exclusions. "Absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms. We need not resort to rules of construction in order to ascertain the meaning of an insurance policy when no ambiguity exists. We will not rewrite the terms of an

insurance contract under the rule of strict construction against the insurer so as to bind the insurer to a risk that the contract plainly excluded and for which it was not paid." *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC,* 411 S.W.3d 184, 191 (Ark. 2012).

For these reasons, Admiral's Motion for Summary Judgment (ECF No. 60) is GRANTED. The Motion to Exclude Testimony and Report of John Youngblood (ECF No. 64) is MOOT. The trial scheduled for June 29, 2015 is cancelled. The Clerk is directed to close the case.

IT IS SO ORDERED this 1st day of June, 2015.

James M. Moody Jr.
United States District Judge